## BOWEN, et al v. CITY OF HOLLYWOOD.

Industrial Commission.
May 31, 1955.

William I. Brenner, Miami Beach, for Nellie Boykin Bowen.

Harry Goodmark, West Palm Beach, for Mary Catherine Bowen and Stephanie Childers.

Ross & Reinhardt, Miami, for the employer and insurance carrier.

JAMES R. KNOTT, Deputy Commissioner.

A hearing in this proceeding was held before the undersigned deputy commissioner in Fort Lauderdale, following which the depositions of several witnesses were submitted.

Asbury W. Bowen was killed by a stroke of lightning on September 1, 1954, in the course of his employment with the City of

Hollywood, Florida, as a maintenance man on a golf course. His average weekly wages were $66.22.

This proceeding relates to claims for the benefits of the Act on account of Bowen's death severally filed in behalf of (1) Nellie Boykin Bowen, his alleged widow, (2) Mary Catherine Bowen, his alleged dependent sister, and (3) Stephanie Childers, a minor born October 9, 1953, his alleged dependent acknowledged illegitimate child. The claims are controverted by the insurance carrier for the employer on the grounds—(a) that the deceased's fatal injury did not "arise out of" his employment, i.e., was not the result of exposure to a hazard of lightning greater than the risk to which the general public was exposed; (b) that the claimants were severally not dependent upon the deceased.

The evidence showed that on the day of his fatal injury, the claimant, who had been mowing the grass on the golf course, and two of his fellow employees went to a golfers' shelter for protection from an approaching storm. The shelter, which was in the vicinity of several tall pine trees, was constructed in the form of a cross, composed of concrete block walls with a concrete roof and with no side walls. In each of the four pie-shaped quadrants of the shelter were two wooden benches along the walls. While seated on one of the benches between his two fellow employees, Bowen was struck by lightning. At the time of his fatal injury, his shoes were wet, and rested upon a grass catcher attached to a metal mowing machine.

An electrical engineer testified as an expert witness in behalf of the carrier that in his opinion, although the presence of the pine trees could have influenced the attraction of lightning to that immediate vicinity, the deceased's wet shoes and the fact that his feet rested on a metal lawn mower had no influence in determining the path of the lightning stroke which caused his death; that the deceased was not thereby subjected to a greater risk from lightning than any other person on the golf course or under the shelter; that "insulators" and "conductors" do not materially influence the course or path of lightning, which is determined principally by the mass and not the conductivity of an object. He stated, "I don't think it [the mower] had anything to do with it . . . . lightning stroke is so unpredictable and so much is not known about it, that it's just a matter of opinion on my part." He further stated that while a person in an office building or on a street lined with buildings would be subject to less risk than a person on a golf course, the hazard on a golf course would be no greater than in any other *open area*.

It is apparent from all the circumstances that the deceased was exposed by the conditions of his employment to a hazard from lightning greater than that to which the general public was exposed, and hence that his injury arose out of as well as in the course of his employment.

The merits of the claim of Nellie Boykin Bowen depend chiefly upon a determination as to whether she is the lawful widow of the deceased.

The deceased married one Rosetta Ward on March 25, 1944, in Hallandale, Florida, he being 19 years of age at that time and home on furlough from military service. He was discharged from military service in March 1946, and rejoined his wife at his mother's home in Hallandale, where they lived until May 1946, when he went to New York. His wife, who had been living with his mother except when attending college, did not accompany or follow him to New York, because, according to her testimony, he had signified his intention for her to become a prostitute there, to which she objected.

Rosetta Ward Bowen left Hallandale in May 1946, and returned to her former home in Beresford, near DeLand, Florida, where she stayed with her aunt, Dora Clarke, for two weeks, returned briefly to Beresford, and went to Lyons, Georgia, where she lived at 205 East Broad St. until 1951 or 1952, when she moved to Jacksonville, her present home. She resided in Jacksonville first at 1517 Madison St. and then at her present address, 1905 McMillan St. She last saw the deceased in July 1946, at a night club in New York, following which, in February 1947, according to her testimony, she bore a child by him, the full name of whom was Ron Madison. She testified that she never sought or obtained a divorce from the deceased, and that he never sought or obtained one from her, to her knowledge. She further stated that the deceased was not acquainted with her address at all times; nevertheless, it is strongly indicated by the evidence that he probably always had means of obtaining her address, had he wished to do so. Her present "married name" is Mrs. Francis Jackson. She is not claiming compensation on account of the deceased's death, either for herself or her child.

On August 17, 1953, the deceased went through a marriage ceremony with Nellie Boykin Johnson at the City Hall in New York City, having signed an "affidavit for license to marry" stating that he had not previously been married. He had been living with Nellie since December 1952, according to her testi-

mony, at her house on Hancock Street, in Brooklyn. She sold that house on September 2, 1953, and bought another home in Brooklyn on December 16, 1953. She testified that the deceased lived with her until October 1953, when he returned to Hallandale. The weight of the evidence showed that he intended to remain in Hallandale, and she intended to remain in Brooklyn, and that he did not contribute to her support, at least after his return to Florida.

The evidence showed that subsequent to his separation from Rosetta Ward Bowen, the defendant did not reside in any state other than New York and Florida. It was shown that no record of a divorce involving the deceased existed in the records of the counties comprising the five boroughs of New York City, or in the nearby counties of Dutchess, Westchester, Putnam or Orange. The records of the Florida Bureau of Vital Statistics from 1944 through 1954 fail to evidence a divorce involving Asbury W. Bowen.

The record established that there could be no *reasonable* probability that the deceased secured a divorce from Rosetta Ward Bowen, and clearly and convincingly rebutted the presumption of law which favored the second marriage. It must be held, accordingly, that the deceased lacked legal capacity to become married to Nellie Boykin Bowen, and that she is not the lawful widow of the deceased. See Johnson v. Johnson (Fla.), 51 So. 2d 421; Hillyer & Lovan v. Florida Industrial Commission (Fla.), 19 So. 2d 838.

The record shows that the claimant Mary Catherine Bowen, sister of the deceased, unmarried, was physically incapacitated from earning a livelihood and was dependent for support upon the deceased. However, she was more than 18 years of age at the time of his death. Section 440.02(13), Florida Statutes 1953, provides in part as follows—" 'Child', 'grandchild', 'brother' and 'sister' includes only persons who at the time of the death of the deceased employee are under eighteen years of age."

Section 440.16(2) of the Act provides for the payment of compensation for a "child" of a deceased employee at the rate of 25 percent of the deceased's average weekly wages, and for the payment of compensation to a "brother, sister or grandchild" of the deceased at the rate of 15 percent of such wages. Section 440.16(3) provides as follows—"For the purpose of this chapter the dependence of a widow or widower of a deceased employee shall terminate with remarriage. The dependence of a child, ex-

cept a child physically or mentally incapacitated from earning a livelihood, shall terminate with the attainment of eighteen years of age, or upon marriage."

The Act clearly separates the "child" of a deceased employee from a "sister." The provision that a "child" physically or mentally incapacitated from earning a livelihood does not lose dependency status with the attainment of 18 years of age is not extended by the Act to a "sister." Accordingly, under the doctrine *expressio unius est exclusio alterius*, the sister of a deceased employee, even though in fact dependent upon the deceased by reason of physical incapacity to earn a livelihood must be held not entitled to compensation as a legal dependent within the meaning of the Act, if she has attained the age of 18. The claimant Mary Catherine Bowen, although in fact dependent upon the deceased, is thus not entitled to compensation on account of his death.

The claimant Stephanie Childers was shown by the evidence to be the acknowledged illegitimate child of the deceased, dependent upon him for support. As such, under section 440.16 (2) (d) she is entitled to compensation at the rate of 25 percent of the deceased's average weekly wages, there being no widow entitled to compensation.

The deputy commissioner finds as follows—

The deceased's said fatal injury arose out of and in the course of his employment with the City of Hollywood, Florida.

The deceased was without legal capacity to marry Nellie Boykin Bowen, and she is therefore not his lawful widow.

The claimant Mary Catherine Bowen, although in fact dependent for support upon the deceased, lacks dependency status under the Act, having reached 18 years of age at the time of the deceased's death.

Stephanie Childers is the acknowledged illegitimate dependent minor child of the deceased, and as such, is entitled to compensation at the rate of $16.55 per week, representing 25 percent of the deceased's average weekly wage. Her mother, Enease Childers, is hereby designated as the person to whom payment of such compensation shall be made for such minor child.

The claimant Stephanie Childers was not represented by counsel until after the time of the hearing in this proceeding in Fort Lauderdale, where testimony was received with respect to her dependency status and her relationship to the deceased. A memo-

randum brief was later filed by Harry Goodmark, Esq., in her behalf and for Mary Catherine Bowen, so that he is entitled to a reasonable fee for his services, hereby fixed at $140.

Wherefore, upon consideration, it is ordered as follows—

The employer, by and through the insurance carrier, American Automobile Insurance Co. shall pay—

The reasonable funeral expenses of the deceased in an amount not to exceed $350.

To Enease Childers, as mother of Stephanie Childers, compensation at the rate of $16.55 per week beginning as of September 2, 1954. Such compensation payments shall be brought to a current basis and shall continue during the dependency of such minor child for a period not to exceed 350 weeks from the date last above mentioned.

To Harry Goodmark, Esq., the sum of $140 for his legal services in behalf of Stephanie Childers.

The legally taxable costs in this proceeding, incurred by the several claimants at and prior to the hearing held in Fort Lauderdale.

The claims of Nellie Boykin Bowen and Mary Catherine Bowen are denied.